v. Flambeau, Inc. v. Flambeau, Inc. v. Flambeau, Inc. v. Flambeau, Inc. v. Flambeau, Inc. v. Flambeau, Inc. v. Flambeau, Inc. v. Flambeau, Inc. v. Flambeau, Inc. v. Flambeau, Inc. v. Flambeau, Inc. And this is the only art that is cited specifically by the district court in its order on the last page of the order, just these three pieces of art. Now the district court does say at least these three pieces of prior art invalidate the patent claims. But it's improper for the court to lump all the claims together, lump all the prior art together, and simply make a rote statement that these, without an analysis on a claim-by-claim, element-by-element analysis. And it didn't state that any other particular art invalidated the claims, and therefore this court shouldn't consider that either. Regarding inherency, Flambeau cannot and should not be able to say that whatever element is missing in the prior art is simply inherent. The rule of this court is there must be substantial evidence to support a finding of inherent disclosure. And all that inherent disclosure requires that the element necessarily exist in the prior art. And what's interesting in this case, of course, is that the expert that Flambeau proffered didn't even have physical copies of the art, the AOL reference, the ChexQuest reference, or the Windows 95 reference that he stated had inherent elements. That doesn't meet the burden of reasonable evidence, particularly when we're talking about claim terms like control data, executables, linking data, vendor and source data within the CD-ROMs themselves, or in this case they were disks. Did Flambeau's expert do a claim-by-claim analysis for invalidity purposes? It attempted to, but by its own admission, missed elements within the prior art. And all the elements that were missing in the prior art, one of the most notable examples is the term label, which the expert admitted that he didn't define, but that term label appears in every single claim. He said he didn't identify label in some of the prior art. And here's an example as we've gone through this claim chart, which I know we provided a portion to the court, is that the expert said that control data is inherent in the ChexQuest reference, it's inherent in the AOL reference, it's inherent in the Windows 95 reference. He says that executables are inherent in those same references. He says linking data is inherent in those references. He says that establishing communication is inherent in those references. He says that vendor data on the CD-ROM is inherent in those references. And with respect to the claim term networking, he says that it's inherent in three of those, in actually those three references as well. So although the expert ostensibly listed out every claim and every claim limitation, he simply didn't find elements that correspond in the prior art to the claimed invention. He didn't go that far. And the court should not have accepted that inherency argument. In fact, we don't even know if the court did accept that inherency argument, because it's not as if the court incorporated by reference that Dr. Tonkin report. The order itself doesn't make any reference to that report. All that the order says in the last paragraph is, the AOL, ChexQuest, and the Windows 95 references invalidate the patents that issue. There's no analysis whatsoever. Under Section 103 obviousness, again the district court failed to undertake. What do you think is the basis upon which the district court excluded your expert? With respect to Rule 702, we're unclear is the reason. He says he doesn't think his testimony would be helpful because he doesn't have any of the background that is relevant to the invention. Now what he didn't say precisely was, he isn't one of skill in the art. But he clearly isn't one of skill in the art. He doesn't have any experience relevant to what's at issue in these patents. So why isn't it harmless error that he failed to articulate with precision the patent law jargon that we would like to hear when he did clearly say your expert didn't have a background that was related to this? The court said that his background wouldn't be helpful in one sentence. In fact, there's one paragraph, but it's just the very last sentence where he says that. It's JA 7597. The Rule 702 requires particularized findings under Dodge and the Tenth Circuit. And in fact, the Tenth Circuit reverses if there are not specific findings and says that in the absence of such findings, we must conclude that the court abused its discretion in admitting such testimony. This is on page 1223, and there's a long paragraph there that talks about how detailed these factual findings need to be. So either the court's ruling should be reviewed de novo because it didn't apply the elements A, B, C, and D of Rule 702. The court said he was a mechanical engineer, and I take from that that he thought that there was inadequate experience in the computer activities. Is that your sense? The court did mention that he was a mechanical engineer, and he is. What's interesting to note here is that under ETAG's definition of a person of ordinary skill in the art, which, by the way, the court never defined, but under ETAG's definition, he does meet those requirements. Flambeau's expert doesn't meet its own requirements, and that's the reason we say that should be reversed. Yeah, well, I don't even understand Flambeau's expert. He said it's a team of people. This is an invention in which there is one inventor listed, but his view is for you to have ordinary skill in the art, you have to actually be, quote, a team of people. That's right, and he says... I don't understand that. We don't understand it either. It's unusual, and he said you have to have one, two, three, four... A lot of degrees. ...five different levels of experience, and then he candidly admitted during cross-examination on the stand that he has none of those things, but what he said is that he falls under his catch-all provision, quote, or similar comparable training or experience. This is JA4628. If we look at our expert's testimony, although he was a mechanical engineer, he said that he programmed code. He had pieced together computers himself, and now I'm looking at JA7349 through 50. He stated that for 15 years, he participated in value analysis seminars for companies on advertising in the use of new medias, including emerging technologies. He stated that he had marketed his own company with CD-ROM. But what other... Let's go back to Mr. Smith for a minute, because I think... I mean, I understand there are problems here, but let's go back to Mr. Smith. What experience does he have relevant to the field of this invention at all that was proffered? As I was mentioning, is that he marketed his own company with digital media, including CD-ROMs. He programmed executable code and knew what executables were. He had, in fact, created software programs. He had coordinated a team comprising of marketing, purchasing, and web designers for over a period of 15 years. And what's interesting here is that our expert probably does fit within most of the categories of Flambeau's alleged person of ordinary skill in the art, because Flambeau also states that if you don't have comparable experience, what you could do is you could consult with people that do. This is in their last element, JA7244 through 45, or JA6685 or 7841 through 52. And our expert says that he did consult for a period of 15 years with those skilled in the various categories of Conkins testimony. With respect to exceptionality, well, let me just go back for one minute, just for the purposes of the record on obviousness. There was no effort by the district judge to make any findings under the gram factors. He never attempted to define the scope and content of the prior art. And this is important because the patent examiners on reexamination held that this art was non-analogous to the claims that were issued and permitted to go forward. Another big problem is that the district court made no findings with respect to motivation to combine those references, and instead erred on the side of hindsight. And we cautioned the court, as mentioned in our brief, that it shouldn't use hindsight. And the court kept saying, in today's world, and the court went on to say, then we should combine those references. And the court went on to say that we use hindsight all the time, and that's how we make our analysis, which maybe works in other contexts. It just doesn't work in the patent law. With respect to exceptionality, the district court did not abuse its discretion in denying Flambeau's request for fees and costs. This case is not unusual in the manner that it was litigated or in the litigating position of ETACs. As a primary matter . . . Am I right in thinking that the judge's ruling on that comes at JA 7600? I was looking for the judge's ruling on exceptional . . . It comes on . . . At 7600 . . . And it says, Defendant Flambeau inks request for attorney's fees and costs pursuant to inter alia 35 U.S. . . It looked to me like, if you look at 7, what did I say, 7600? That's where the district court was saying, I think in part because of what they've done, this is not a case which justifies any particular compensation by way of fees or otherwise. Yes. I don't know what he was talking about, what they have done. What he was talking about is what the PTO did on reexamination. And what he was really saying is that our litigating position of trying to uphold the patents as valid was not unusual or exceptional because the PTO did what it did. In other words, the PTO issued these patent claims largely . . . As of the time that discussion was going on, 7600, miners said that Flambeau had not by then filed an actual motion for an exceptional case. It never in fact filed a motion. That's what I want to ask about. It made its motion verbally at the end of all of the proceedings, the summary judgment proceedings. Flambeau's counsel says we will seek fees if we win, but we'll brief that up separate. They never did. That's at 7579. They never filed a motion. That's another reason why the court's decision should be upheld based on the oral motion that they made. And do we know exactly where the oral motion was in the record? It was on the last day of the hearings. And I can try to look at this here. Maybe Flambeau's counsel, I was going to ask them where they actually made a motion. I didn't see any. I believe it was December 13, 2013. It's what I'm seeing on page 12 of the order. We'll take that up with the other side. Any more questions at the moment? We'll save you a little time. Ms. Bankers. Thank you. May it please the court. My name is Josephine Bankers. I'm from Quarles and Brady on behalf of defendant Pelley. Did you file a motion for exceptional case? I don't have the exact quote on the record. My recollection is that we definitely said we intended to seek our fees. And there was some questions. I see that. That's on page 7579. We will seek the fees if we win, but we'll bring that up separate. I'm just curious to know whether a motion was ever filed. There wasn't a formal motion filed at that point after that. On the record, the judge was very clear that he was denying the request for fees. And in the written order, he very clearly denied the request for fees. OK. And that was an order that was drafted by Flambeau. ETAGS had a chance to see it and approve it, and then entered by the judge where the request for fees was denied. OK. Proceed. We're here today on 79 patent claims. But when you look at the patent claims, they are a conglomeration of very similar patent claims across three patents. These patents are directed to the decades-old practice of labeling products, including labeling to communicate some type of information or advertising for promotional purposes. There's nothing novel or non-obvious about a single one of the asserted claims in the three patents in suit. In ETAGS' own words, there is a very detailed Let me just start by saying where we were at in the process at the point that the district court ruled. Flambeau had moved for summary judgment, proposing a multitude of findings of fact that were undisputed by ETAGS as to what was in the prior art and how the prior art, either undisputed or unrefuted with any expert or other admissible evidence, I should say, or how the prior art read on each and every claim. Included with that motion for summary judgment was the unrebutted expert testimony of Flambeau's expert, Dr. Chip Tonkin, which went through on an element-by-element, claim-by-claim basis. The district court didn't adopt any of that. He didn't expressly rely on it. He didn't give any indication that he was all in with Mr. Tonkin and his analysis. I think if you read the district court's decision and you read some of the discussion that Flambeau cites that led up to the decision, this was the result of days of discussion. Where in the decision am I to ascertain his findings of fact and conclusions of law? He spoke for at least several minutes before he ruled about how he tried very hard to find the novelty. And throughout the discussion, there are multiple times where the court asked ETAGS, what's the inventive concept here? ETAGS repeatedly said, this is about creating an ongoing advertising relationship with a customer. Yes, but the inventive concept isn't what is anticipated or rendered obvious. It's the claim language. And for example here, a lot of these claims required a first computer and a second computer. And your expert nonetheless said that those claims were anticipated by references that undisputedly have no computers involved in them. Well, that's a very interesting point. And I understand that they argued for infringement purposes. That's right. But that is irrelevant because nothing on infringement is before this court. What's before this court is a district court's conclusion that every claim in this patent is anticipated by references that include no computers, even though many of the claims expressly and unequivocally require computers. And we agree that claims, for example, claims 1 through 10 of the 332 patents do expressly cite a first computer and a second computer limitation. Flambeau's experts opined that the accused products don't infringe because they're, for example, a packaged yo-yo with a CD. The invalidity analysis is okay. ETAG said ignore those claim elements. For the purposes of infringement, those claim elements are in a yo-yo with a CD, which is undisputably not a first and second computer. So Flambeau's theory was fine. We'll take ETAG's at its word for it. If it's in the accused products, then it's met by the prior art because those are also used. For example, Check Quest is also used by a first computer and a second computer, a vendor link, linking AOL to this consumer, the exact same match as the infringement contentions. So ETAG can't have it both ways. And we don't have any indication because we have no district court opinion to review here that the district court agreed with you. For example, a detailed opinion would include, for example, they argued for infringement purposes blank. I am going to stop them from arguing anything to the contrary for validity because I don't, I mean, I have you telling me what they argued on infringement, but there are no rulings on infringement. There's no collateral estoppel or res judicata or anything. They didn't benefit or win on any of those infringement arguments. So I don't even know that that is the basis upon which the district court decided that all of these claims were anticipated. I have no way of figuring out whether he agreed with you on that, whether he was concluding they ought to be stopped or bound by it or anything. I understand and I agree that I wish the district court would have undertaken the endeavor to write a detailed opinion. What is in the order is an agreed upon list of 70 of the findings of facts from summary judgment. Those were things that ETAG had a chance to approve going in there. They're not the full list that Sambo wanted, frankly. And if you just look at that list, you can see all of the elements of each of the claims are either in there expressly or for a few claims, the difference that is, okay, so Checks Quest, the disc was in the serial back. Some of the claims require that the computer readable label be visible at a point of purchase. So that would be an area where in light of Checks Quest, we would say, okay, well, it's obvious in light of, for example, the PC Magazine, PC Gamer Magazine where the disc is right on the front cover. The top where you have the clear lid where you can see the disc in it. The AOL where you don't purchase it, you get it for free in the mail, but it's visible at the point as soon as you get it. This district court held that every claim was anticipated by all those references, and your own admission through your discussion right now is that that's clearly not the case. What you're saying is nonetheless obvious because even the tone of your voice, come on, you know. I mean, and I get it, and I'm not saying that you're actually wrong, by the way, about any of what you're saying on the merits. The problem is I'm reviewing a decision by the district court that every one of these claims was anticipated or without any analysis of obviousness obvious. He doesn't even cite a claim limitation anywhere. He doesn't discuss any of the claims, not a representative one or much less the 79, and I'm just having a little trouble accepting a judgment that includes no analysis, even if, I mean, I can't be the one on appeal to individually review 79 claims for anticipation and obviousness, right? You're admitting there's a whole bunch of claims and a whole bunch of references that might be missing particular elements of those claims, but if they're so obvious, then I don't know that I'll disagree with you on a single thing you've said except that I just don't see it as my job on appeal to do that in the first instance. Well, I think in this instance there are enough findings of fact in the order. I do wish the judge would have written a nice long written opinion claim by claim, element by element. That would have been helpful here. There is discussion. It's not a question of whether it would be helpful. It's a question of whether it's required by law. I don't think I have anything to review here, anything meaningful, and I don't know how to review 79 claims when not a single element of one of those claims is actually discussed in an opinion that renders them all anticipated and or obvious. I do think this court does have authority. I mean, a review of summary judgment is de novo. So, do you think we have authority? Do you honestly think that it would be a good, A, use of our time, or B, good for the judicial system as a whole for us to, in the first instance, even though our authority is de novo, element by element review 79 separate claims and compare them to a number of different references. You may be right that technically we have the authority, and maybe in a case where there's a single representative claim, we went ahead and did it. I feel like what you're asking is more than what we should ever do. Sure. I think there are representative claims here. I think on appeal, and we briefed what we thought was representative, we think there's any number of claims that have the same sorts of claim elements when you read through the list of claims. It's the same thing over and over again. But you're saying they're representative, but he probably is not going to agree with you on all that. And what's more, nobody stipulated to, and nor did the sister court find, as we have in most of these cases, that there are a few representative claims. What I think is interesting in this instance is that ETAG, who is the appellant, didn't make any effort in its opening brief to explain how a single one of the 79 claims is actually patentably distinct from, for example, claims 11 and claims 16, which were invalidated by the Patent Office. That is a fair argument. And look, it's not lost on me. But I think that most of his argument is, I don't have to sit here and justify because the district court didn't actually make any findings. He didn't articulate, I'm not going to shoot at the wall with a blindfold on. The district court didn't actually put a target up on the wall. He didn't actually articulate any findings. And you're right. I would have much rather seen his brief say, let me give you an example. Look at claim 74. It has these elements. Of course I would have preferred to have seen something like that in his brief. But his brief does fairly make the argument that the district court's decision is fatally flawed by virtue of not doing any kind of element-by-element analysis. That argument he makes. So I guess I'm quite frankly a little troubled by your motion for damages and costs that the appeal is frivolous. In light of the cursory nature of the district court opinion, I'm genuinely surprised that you would have the wherewithal to file such a motion in this court. I mean, I'm not saying you don't deserve to win at the end of the day, but this is for me far from a frivolous appeal. So I'd like you to explain why you think it's frivolous. I don't think that there's a good faith basis for arguing on the record as it was developed at the district court that the district court erred simply because the district court didn't articulate a long opinion. I think when... They're arguing that their expert should have been considered. And if we agree with them on that point... Well, their expert didn't have any invalidity opinions, and that was admitted. He only opined on infringement. I also think that there are a number of arguments that e-takes has made on appeal aside from this one issue that aren't tenable. For example, why are we here on claims 1 through 10 that require a first computer and a second computer? Let me just double-check back on Smith, because I will tell you we looked extensively to try to find Smith's testimony, expert report, whatever. Couldn't find it anywhere. It's been successfully expunged from anything that I could find with reference to this case or the docket. You're saying, and interestingly, why didn't you put this in your brief, or did I miss it, that Smith actually offered no testimony and was not presented as an expert on the question of validity? Because that seems like an undisputable nail in the coffin for you. So I don't know how I could have missed that. Well, I thought I put it in my brief, but that is absolutely... He was only up there on infringement. His entire report... Wait, was he only up there on infringement because he was excluded from offering expert testimony on validity? No. Did they try to proffer him as an expert for validity purposes? No. They had no report on validity. On the day of the Daubert hearing, Smith attempted to... How are we supposed to know all this when you're telling me this? I mean, it's not in your brief. A lot of the papers you filed are under seal. How am I supposed to know? I mean, I know you're an officer in the court, but we're trying to decide this case on the record that's in front of us, right? Why is it relevant to me right now that maybe their expert had no validity? Well, that is something that... I mean, ETAG has appealed that decision. They wanted their expert to be considered. Correct. Their expert was thrown out on qualifications. That's right. The trial judge said, as to your witness, Mr. Tonkin, I got problems with his qualifications too. That's his very words. But he says, I won't tell you why. I won't tell you what the difference is. So when you get up on appeal, you just guess as to why the qualifications were no good for Smith, but they were okay for Tonkin, even though I had trouble with both. Right? So on the topic of the 702, it seems to me that we're not even being asked to get into what was in the expert, what they wanted to testify to, and when they excluded. That's the way I read ETAG's appeal as well, is merely to reverse the exclusion. But what ETAG didn't explain, and ETAG, frankly, didn't put their expert report in the record to show. ETAG said... There may be a basis for saying... I mean, for example, the whole question of whether or not Smith was properly admitted may be harmless error. If, indeed, he had no view on validity and validity, all that was up there, none under pencil, clearly, harmless error will vitiate a mistake in a 702 report. But we don't know that. Well, I think it's ETAG's job to put that record before this court. ETAG, it is the party who's proffering the expert's burden to show that they're qualified and that their report and opinions should have been admitted, and... Well, they think he's done that. Your adversaries explained to us when he was up there why he thought Smith was qualified. He ran right through Smith's biography, if you will, right? And presumably that's in an expert statement somewhere, his background. So would it be fair to summarize your current argument in this oral argument as even if the court was wrong to exclude Smith, it is harmless error as to the court's decision on invalidity because Smith offered no opinions related to validity? Correct, and I did just find, I flipped back in my brief, I do have it in my brief on page 81 that ETAG had submitted a report on infringement. He had not been disclosed on invalidity and confirmed he had no opinions on same and there's J.A. sites there to the record. Let's have that on 81. Page 81 of my brief. What does it mean when he had not been disclosed on invalidity? What does that mean? So by the Rule 26 expert disclosure date, he had given no opinion on invalidity. After Lambeau's expert gave its opinions on invalidity, ETAG did not seek leave to or attempt to prior to the Dahlberg hearing submit a report on invalidity. At that hearing, there was confirmation on the record, and I believe, I don't have it right in front of me, that is the J.A. site right there. We see expert reports on each side. Rebuttal from experts is not required. He stated his case. Right. My point is that at no time did ETAG attempt to proffer an invalidity report or a validity report from Mr. Smith. But it's your argument that Rule 26 requires identification of all experts and the subject of the testimony they're going to give. And here, while they identified Mr. Smith on issues of infringement, they expressly did not identify him on issues of validity. And that is true even in the face of your expert being identified for both. That is correct. And at the point that the court ruled, we had fully briefed summary judgment. We had conducted discovery for years. Experts had been deposed. We were at, after five or six days of final pretrial and Dahlberg hearings, there was extensive discussion on the record, the point of which was to decide if anything was there to be tried. That's how the judge – You said you hadn't made your point as a matter of law. You hadn't gone through all of the claims, every element of every claim. If, as a matter of fact, the expert's opinion fails as a matter of law because it doesn't meet the legal requirements, why do they have to submit a contrary expert report? Well, I think Dr. Tonkin's report, Flambeau's expert report, doesn't fail as a matter of law. Dr. Tonkin did go claim by claim, element by element, not only in his expert report, and we went claim by claim, element by element on summary judgment, but during the final pretrial hearing, Dr. Tonkin, and at the Dahlberg hearing, we went claim by claim, element by element. Toward the end of the hearing, there was a little bit of summarization. These are questions of law. I'm trying to understand the emphasis on the absence of a second expert report from the plaintiff. It is Flambeau's position that Dr. Tonkin's expert analysis as to these claims are essentially entirely unrebutted. And then we have lawyer argument that this is, as a matter of law, the requirements, the burdens have not been met. This is not an expert's argument. This is an argument on the law. Well, all right. I think we have the point. Any more questions for counsel? No. Any more questions for counsel? Okay. Thank you, Ms. Baker. Thank you. And, Mr. Pia, you have three minutes. Thank you. Briefly, Mr. Smith did provide extensive testimony during the summary judgment. Proceedings on the issue of invalidity and novelty. And that is in JA7308-15, 7349-50, 7526-33, 6121, 6008, 6015, and 6020. While counsel is correct that he didn't provide a report in that regard, he was providing a rebuttal argument and was ultimately excluded. But it's not as if there were contentions of material facts that went unresponded to. So is it your view because, quite frankly, Rule 26 doesn't give you the right to offer rebuttal testimony of an expert that you didn't disclose under Rule 26? So that could have formed the basis for the district court to exclude Mr. Smith from testifying on validity. But is it your view that that is absolutely not what this district court based his exclusion on, clearly and unequivocally not? So even if the district court could have exercised his discretion to exclude your expert for not having been properly disclosed at the relevant time, that is sure as heck was not on appeal to us. And he did, in fact, offer a validity opinion. Does that sum it up okay? That sums it up very well. One other point I'll make is that this Tonkin expert report that was not incorporated by reference by the district judge doesn't even have an analysis of the Windows 95 disk. So how does a court, a district judge, combine those references when it doesn't even have one of the references in front of it under an obviousness analysis, which it didn't do in the first instance? The multitude of facts that do appear in this order were facts as to authenticity of what certain prior arts stated. And the reason that they appear in that order in the first place is simply because the judge said, as to undisputed facts, include them in the order, but then made no analysis regarding those facts. But your friend says that there was neither in an expert report even excluded or in the argument before the court any controverting of their position claim by claim. There was an extensive analysis in the summary judgment briefing of ETags of all the elements that are missing in the prior art. Namely, that under their definition of label and secure, none of the pieces of prior art disclosed those references. And during the oral argument and also during examination of experts, we got down to the nitty-gritty on the term control data and executables, which were also heavily disputed. And there was no resolution as to what those meant or whether or not they actually appeared in the references that apparently were argued by Flambeau should have been assumed through inherency. One point on this frivolous appeal motion. We have found a couple instances where fees and costs were actually awarded in reverse when it was an unnecessary motion in the first instance, and we request our fees and costs in that regard. Any other questions? When you first stood up, you asked that we reverse the district court and remand for further proceedings. Is reverse correct or should we vacate? I mean, reverse is what you do when you know that there is legal error. Right? Now, that's an interesting question because what we're really saying here is that there is procedural error in that the district court didn't give us a reviewable opinion. So I wonder if the proper result wouldn't be to vacate the various judgments and remand. That might be, Your Honor, because there are not findings specifically, although there are conclusions that should be and rulings that should be reversed, but the analysis is nonexistent in most cases. I'll leave that up to the court on the styling of the order. Any more questions? No. Any more questions? Thank you. Thank you both. The case is taken under submission. That concludes the argued cases for this morning. All rise. The honorable court is adjourned until tomorrow morning. It's at o'clock a.m.